**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **LABORERS' PENSION FUND and LABORERS' WELFARE FUND OF THE HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY, THE CHICAGO LABORERS' DISTRICT COUNCIL RETIREE HEALTH AND WELFARE FUND and JAMES S. JORGENSEN, Administrator of the Funds,** | ) | **Case No. 16-cv-11101** |
| **and** | ) | |
| **FOX VALLEY LABORERS' HEALTH AND WELFARE FUND and FOX VALLEY LABORERS' PENSION FUND and PATRICIA M. SHALES, Administrator of the Funds** | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | |
| **ORANGE CRUSH, LLC, an Illinois Limited Liability Company** | ) | |
| **Defendant.** | ) | |

**COMPLAINT**

Plaintiffs, Laborers' Pension Fund and Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity, the Chicago Laborers' District Council Retiree Health and Welfare Fund, and James S. Jorgensen, Administrator of the Funds (hereinafter collectively " Chicago Funds"), Fox Valley Laborers' Health and Welfare Fund, Fox Valley Laborers' Pension Fund and Patricia M. Shales, Administrator of the Funds (hereinafter collectively "Fox Valley Funds") by their attorneys, Patrick T. Wallace, Jerrod Olszewski, Amy N. Carollo, G. Ryan Liska, Katherine C. Mosenson

and Kelly C. Carson, for their Complaint against Defendant Orange Crush, LLC, an Illinois Limited Liability Company:

**COUNT I**

**(Failure To Submit To An Audit To Determine Employee Benefit Contributions)**

1. Jurisdiction is based on Sections 502(e)(1) and (2) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§1132 (e)(1) and (2) and 1145, Section 301(a) of the Labor Management Relations Act ("LMRA") of 1947 as amended, 29 U.S.C. §185(a), 28 U.S.C. §1331, and federal common law.

2. Venue is proper pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2), and 28 U.S.C. §1391 (a) and (b).

3. The Chicago Funds are multiemployer benefit plans within the meanings of Sections 3(3) and 3(37) of ERISA. 29 U.S.C. §1002(3) and 37(A). They are established and maintained pursuant to their respective Agreements and Declarations of Trust in accordance with Section 302(c)(5) of the LMRA. 29 U.S.C. § 186(c)(5). The Funds have offices and conduct business within this District.

4. Plaintiff James S. Jorgensen is the Administrator of the Chicago Funds, and has been duly authorized by the Funds' Trustees to act on behalf of the Chicago Funds in the collection of employer contributions owed to the Funds and to the Construction and General District Council of Chicago and Vicinity Training Fund, and with respect to the collection by the Funds of amounts which have been or are required to be withheld from the wages of employees in payment of Union dues for transmittal to the Construction and General Laborers' District Council of Chicago and Vicinity (the "Union"). With respect to such matters, Jorgensen is a

fiduciary of the Chicago Funds within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A).

5. Plaintiff Patricia Shales ("Shales") is the Administrator of the Fox Valley Funds, and has been duly authorized by the Funds' Trustees to act on behalf of the Funds in the collection of employer contributions owed to the Fox Valley Funds and to the Construction and General District Council of Chicago and Vicinity Work Dues Fund, and with respect to the collection by the Fox Valley Funds of amounts which have been or are required to be withheld from the wages of employees in payment of Union dues for transmittal to the Construction and General Laborers' District Council of Chicago and Vicinity (the "Union"). With respect to such matters, Jorgensen is a fiduciary of the Fox Valley Funds within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A).

6. Defendant Orange Crush, LLC (hereinafter "Company") is an Illinois limited liability company that did and does conduct business within this District and was at all times relevant herein an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5), and Section 301(a) of the LMRA, 29 U.S.C. §185(c).

7. The Union is a labor organization within the meaning of 29 U.S.C. §185(a). The Union operates and maintains its office within the District. The Union and Company have been parties to successive collective bargaining agreements, the most recent of which became effective June 1, 2013. ("Agreement"). (A copy of the "short form" Agreement entered into between the Union and Company which Agreement adopts and incorporates Master Agreements between the Union and various employer associations, and also binds Company to the Chicago Funds and Fox Valley Funds respective Agreements and Declarations of Trust is attached hereto as Exhibit A.)

8. The Chicago Funds and Fox Valley Funds have been duly authorized by the Construction and General Laborers' District Council of Chicago and Vicinity Training Fund (the "Training Fund"), the Midwest Construction Industry Advancement Fund ("MCIAF"), the Mid-American Regional Bargaining Association Industry Advancement Fund ("MARBA"), the Chicagoland Construction Safety Council (the "Safety Fund"), the Laborers' Employers' Cooperation and Education Trust ("LECET"), the Concrete Contractors Association ("CCA"), the CDCNI/CAWCC Contractors' Industry Advancement Fund (the "Wall & Ceiling Fund"), the CISCO Uniform Drug/Alcohol Abuse Program ("CISCO"), the Laborers' District Council Labor Management Committee Cooperative ("LDCLMCC"), the Will Grundy Industry Trust Advancement Fund ("WGITA"), the Illinois Environmental Contractors Association Industry Education Fund ("IECA Fund"), the Illinois Small Pavers Association Fund ("ISPA"), and the Chicago Area Independent Construction Association ("CAICA") to act as an agent in the collection of contributions due to those Funds.

9. The Agreement and the Chicago Funds and Fox Valley Funds' respective Agreements and Declarations of Trust obligate Company to make contributions on behalf of its employees covered by the Agreement for pension benefits, health and welfare benefits, for the training fund and to submit monthly remittance reports in which Company, *inter alia*, identifies the employees covered under the Agreement and the amount of contributions to be remitted to the Funds on behalf of each covered employee. Pursuant to the terms of the Agreement and the Chicago Funds and Fox Valley Funds' respective Agreements and Declarations of Trust, contributions which are not submitted in a timely fashion are assessed liquidated damages and interest.

10. The Agreement and the Chicago and Fox Valley Funds' respective Agreements and Declarations of Trust require the Company to submit its books and records to the Funds on demand for an audit to determine benefit contribution compliance.

11. Notwithstanding the obligations imposed by the Agreement and the Chicago and Fox Valley Funds respective Agreements and Declarations of Trust, the Chicago Funds and Fox Valley Funds demanded an audit and the Company has failed to submit to an audit for the time period of October 1, 2013 through September 20, 2016 thereby depriving the respective Funds of information needed to administer to Chicago and Fox Valley Funds and jeopardizing the benefits of the participants and beneficiaries.

12. Under the terms of the Agreement and to Chicago Funds and Fox Valley Funds' Respective Agreements and Declarations of Trust, the Company is liable for the costs of the audit.

13. The Company's actions in failing to submit timely reports and contributions violate section 515 of ERISA, 29 U.S.C. §1145, and Section 301 of the LMRA. 29 U.S.C. §185.

14. Pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132 (g)(2), Section 301 of the LMRA, 29 U.S.C. §185, federal common law, and the terms of the Agreement and the Chicago and Fox Valley Funds' respective Trust Agreements, the Company is liable to the Chicago and Fox Valley Funds for unpaid contributions, as well as interest and liquidated damages on the unpaid contributions and paid late contributions, reasonable attorneys' fees and costs, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiff Chicago Funds and Fox Valley Funds respectfully request that this Court enter judgment against Defendant Orange Crush, LLC:

a. ordering Defendant Orange Crush, LLC to submit all its books and records for an audit for the period October 1, 2013 through September 30, 2016;

b. retaining jurisdiction to enter judgment in a sum certain on amounts revealed as owing in the audit, if any including unpaid contributions, interest, liquidated damages, audit costs, and attorneys' fees and costs;

c. awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate.

**COUNT II**

**(Failure To Submit To an Audit to Determine Dues Contributions Compliance)**

15. The Chicago Funds and Fox Valley Funds re-allege paragraphs 1 through 14 of Count I as though fully set forth herein.

16. Pursuant to agreement, the Funds have been duly designated to serve as collection agents for the Union in that the Chicago Funds and Fox Valley Funds have been given the authority to collect from employers union dues which should have been or have been deducted from the wages of covered employees.

17. Notwithstanding the obligations imposed by the Agreement, the Company has failed to submit its books and records to an audit to determine dues contributions compliance for the period October 1, 2013 through September 30, 2016, thereby depriving the Union of information.

18. Pursuant to the Agreement, the Company is liable to the Chicago and Fox Valley Funds for the unpaid union dues, as well as liquidated damages, accumulative liquidated

damages, audit costs, reasonable attorneys' fees and costs as the Union's collection agent, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiff Chicago Funds and Fox Valley Funds respectfully request that this Court enter judgment against Defendant Orange Crush, LLC:

a. ordering Defendant Orange Crush, LLC to submit its books and record to an audit for the time period October 1, 2013 through September 20, 2016 to determine dues compliance;

b. retaining jurisdiction to enter judgment in a sum certain on amounts revealed as owing in the audit, if any including Union dues, liquidated damages, audit costs, and attorneys' fees and costs; and

c. awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate.

December 5, 2016

Respectfully submitted,

By: /s/ G. Ryan Liska

G. Ryan Liska
Laborers' Pension and Welfare Funds
Office of Fund Counsel
111 W. Jackson Blvd., Suite 1415
Chicago, IL 60604
(312) 692-1540

23417

HEADQUARTERS OF

# Construction & General Laborers' District Council of Chicago and Vicinity

Affiliated with the Laborers International Union of North America, A.F. of L. - C.I.O. -
6121 WEST DIVERSEY AVENUE - CHICAGO, ILLINOIS 60639 - PHONE: 773-237-7537 - FAX: 773-237-3417

LOCALS 1, 2, 4, 5, 6, 25, 75, 76, 96, 118, 149, 152, 225, 269, 288, 582, 681, 1001, 1006, 1035, 1092

## INDEPENDENT CONSTRUCTION INDUSTRY COLLECTIVE BARGAINING AGREEMENT

It is hereby stipulated and agreed by and between Orange Crush, LLC herein called the "EMPLOYER", and the CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY, herein called the "UNION", representing and encompassing Local Nos. 1, 2, 4, 5, 6, 25, 75, 76, 96, 118, 149, 152, 225, 269, 288, 582, 681, 1001, 1006, 1035, 1092 and encompassing the geographical areas of the counties of Cook, Lake, DuPage, Will, Grundy, Kendall, Kane, McHenry and Boone, in the State of Illinois, together with any other locals which may come within the jurisdiction of the UNION, that:

1. EMPLOYER, in response to the UNION's claim that it represents an uncoerced majority of each EMPLOYERS' laborer employees, acknowledges and agrees that there is no good faith doubt that the UNION has been authorized to and in fact does represent such majority of laborer employees. Therefore, the UNION is hereby recognized as the sole and exclusive collective bargaining representative for the employees now or hereafter employed in the bargaining unit with respect to wages, hours of work and other terms and conditions of employment in accordance with Section 9 of the National Labor Relations Act without the need for a Board certified election.

2. The EMPLOYER affirms and adopts the Collective Bargaining Agreements between the UNION and the Builders Association of Chicago and Vicinity, the Illinois Road Builders Association, the Underground Contractors Association, the Mason Contractors Association of Greater Chicago, the Concrete Contractors Association of Greater Chicago, G.D.C.N.I./C.A.W.C.C., the Lake County Contractors Association, the Contractors Association of Will and Grundy Counties, the Fox Valley General Contractors Association, the Chicago Demolition Contractors' Association, the Illinois Environmental Contractors Association, and all other Associations with whom the District Council or any of its affiliated local unions has a duly negotiated agreement, and re-establishes all agreements from June 1, 1976 together with all amendments thereto. Where no current Association agreement is negotiated, the terms of the most recent expired agreement are incorporated herein with all terms, conditions and dates extended for the duration hereof, until a current agreement exists that shall be incorporated retroactively herein. It is further agreed that where a contractor works in the jurisdiction of any local UNION, then the Association agreement covering the local UNION is herein specifically incorporated in this agreement and shall supersede the standard District Council agreements in the case of any conflict between the District Council agreement and the local Association agreement. Nothing herein shall limit the jurisdiction of this Agreement to less than that provided in this Agreement.

3. The EMPLOYER agrees to pay the amounts that it is bound to pay under said Collective Bargaining Agreements to the HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY, the LABORERS' PENSION FUND, the CONSTRUCTION AND GENERAL LABORER'S DISTRICT COUNCIL OF CHICAGO AND VICINITY TRAINING TRUST FUND, the CHICAGO AREA LABORERS-EMPLOYERS COOPERATION EDUCATION TRUST ("LECET"), and to all other designated Union-affiliated benefit funds; and to become bound by and be considered a party to the Agreements and Declarations of Trust creating said Trust Funds as if it had signed the original copies of the Trust instruments and amendments thereto. The EMPLOYER ratifies and confirms the appointment of the EMPLOYER Trustees who shall, together with their successor Trustees, designated in the manner provided in said Agreements and Declaration of Trusts and jointly with an equal number of Trustees appointed by the UNION, carry out the terms and conditions of the Trust instruments.

The EMPLOYER further affirms and re-establishes that all prior contributions paid to the Welfare, Pension, Training and LECET Funds were made by duly authorized agents of the EMPLOYER at all proper rates, for the appropriate periods of time, and that by making said prior contributions the EMPLOYER evidences the intent to be bound by the terms of the Trust Agreement and Collective Bargaining Agreements which were operative at the time the contributions were made, acknowledging the report form to be a sufficient instrument in writing to bind the EMPLOYER to the applicable agreements.

4. Employees covered by this Working Agreement shall retain all the work traditionally performed by members of the UNION. The EMPLOYER agrees that it will not cause any such traditionally performed work to be done at a construction site by employees other than those covered by this Memorandum of Agreement, except with the prior written consent of the UNION. Any EMPLOYER, whether acting as a contractor, general manager or developer, who contracts out or sublets any of the work coming within the jurisdiction of the UNION, shall assume the obligations of any such subcontractor for prompt payment of employees' wages and other benefits, including reasonable attorneys' fees incurred in enforcing the provisions hereof. Notwithstanding any agreement to the contrary, the EMPLOYER'S violation of any provision of this paragraph will give the UNION the right to take any other lawful action, including all remedies at law or equity.

5. In the event of any change in the ownership, management or operation of the EMPLOYER'S business by sale or otherwise, it is agreed that as a condition of such transfer or change that the new owner and management shall be fully bound by the terms and conditions of this Agreement. This Agreement is applicable to all successors and transferees of the EMPLOYER, whether corporate or otherwise. The EMPLOYER shall provide ten (10) days prior notice to the Union of the sale or transfer.

6. The negotiated wage and fringe benefit contribution rates in the various Collective Bargaining Agreements are as follows:

| | |
|---|---|
| June 1, 1998 to May 31, 1999 | $23.35 Per Hour Wages<br>$ 3.27 Per Hour Health and Welfare Fund<br>$ 2.05 Per Hour Pension Fund<br>$ .10 Per Hour Training Fund (plus additional amounts in Association agreement)<br>$ .02 Per Hour MCIAF (if applicable in Association agreement)<br>$ .02 Per Hour LECET (to be deducted from MCIAF if LECET contribution is not provided in Association agreement)<br>$ .01 Per Hour Chicagoland Safety Council (if applicable)<br>In addition, the Employer shall pay other amounts if provided in appropriate Association agreements for Industry funds. |
| June 1, 1999 to May 31, 2000 | $ 1.25 Per Hour increase for the year June 1, 1999 through May 31, 2000 to be allocated between wages and fringe benefits by the Union in its sole discretion. Welfare, Pension, Training and LECET Funds contributions to remain the same unless additional sums are allocated. |
| June 1, 2000 to May 31, 2001 | $ 1.35 Per Hour increase for the year June 1, 2000 through May 31, 2001, to be allocated between wages and fringe benefits by the Union in its sole discretion. Welfare, Pension, Training and LECET Funds contributions remain the same unless additional sums are allocated. |

All additional wage rates, dues checkoff, and fringe benefits that are negotiated or become effective after May 31, 2001, shall be incorporated in this Memorandum of Agreement.

7. Effective June 1, 1998, all EMPLOYERS covered by this Memorandum of Agreement incorporating the various Collective Bargaining Agreements shall deduct from the wages of employees covered by the said contract, uniform working dues in the amount of 1.5% of gross wages, or as determined by the UNION, and shall remit monthly to the UNION office designated to the EMPLOYER by the District Council the sums so deducted, together with an accurate list of employees from whom wages and dues were deducted and the amounts applicable to each employee, not later than the 15th day of the month following the month for which said deductions were made.

8. It is the intention of the parties that such deductions shall comply with the requirements of Section 302(c)(4) of the Labor Management Relations Act of 1947, as amended and such deductions be made only pursuant to written agreements from each employee on whose account such deductions are made, which assignment shall not be irrevocable for a period of more than one year or beyond the termination date of the Memorandum of Agreement, whichever occurs sooner.

9. This Agreement shall remain in full force and effect through May 31, 2001 (unless an applicable Association agreement is of longer duration) and shall continue thereafter unless there has been given written notice, by registered or certified mail by either party hereto, received no less than sixty (60) nor more than ninety (90) days prior to the expiration date, of the desire to modify or amend this Agreement through negotiations. In the absence of such notice the EMPLOYER and the UNION agree to be bound by the new area-wide negotiated contracts with the various Associations incorporating them into this Agreement and extending this Agreement for the life of the newly negotiated contracts.

10. The EMPLOYER acknowledges and accepts the facsimile signatures on this contract as if they were the original signatures. The EMPLOYER further acknowledges receipt of a copy of the complete Joint Working Agreement. Upon request of the UNION, the EMPLOYER shall execute another agreement that reflects the final contract settlements incorporated herein.

Dated April 2 (month / day), 99 (year)

ACCEPTED:
Laborers' Local Union No. 76

By: [signature]

CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY

By: [signature]
Robert E. Bloch, Trustee

For Office Use Only: IRBA

ORANGE CRUSH LLC
(Employer)

By: SAM Palumbo Jr. PRESIDENT
(Print Name and Title)

[signature]
(Signature)

(Address)

(City, State and Zip Code)

(Telephone)

TRUST FUND

EXHIBIT A